TIMOTHY ZINDEL, #158377
Attorney at Law
P.O. Box 188976
Sacramento, CA  95818
Tel: (916) 704-2665
timzindel@gmail.com

JOHN BALAZS, #157287
Attorney at Law
916 2nd Street, Suite F
Sacramento, CA  95814
Tel: (916) 447-9299
balazslaw@gmail.com

Attorneys for Defense Counsel
ANDREW FRANCISCO

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

|  |  |  |
|---|---|---|
| In re: APPEAL OF ANDREW FRANCISCO. | ) ) ) ) ) ) ) ) ) ) ) ) | Case No. 2:25-mc-00112-DAD<br><br>**Appellant Andrew Francisco's Brief on Appeal Challenging Magistrate Judge's Sanction Order** |
| ANDREW FRANCISCO,<br><br>    Appellant. | | |

# TABLE OF CONTENTS

I.      **Introduction** …………………………………………………………….   1

II.     **Issues for Review**  ………………………………………………………   2

      A.      Whether the magistrate judge erred in imposing punitive sanctions without the procedural protections required for sanctions that are criminal in nature.

      B.      Whether the evidence supported the magistrate judge's finding that attorney Andrew Francisco acted in bad faith rather than carelessly in filing briefs with an erroneous citation to a non-existent case.

      C.      Whether the sanctions imposed were excessive given the mitigating factors and all the circumstances of the case.

III.    **Statement of the Case** …………………………………………………...   2

IV.     **Argument** …………………………………………………………...  13

      **A.      Standard of review** ………………………………………………..   13

      **B.      The order did not provide required procedural protections for sanctions that were criminal rather than civil in nature.** ………………   13

      **C.      The evidence does not support the magistrate judge's finding that Mr. Francisco acted in bad faith rather than carelessly in inadvertently submitting a brief citing a non-existent case rather than the intended, correct case.** ……………………………………………   15

            **1.      The magistrate judge's findings do not satisfy the "bad faith" standard under *Fink v. Gomez*.** …………………………………..   16

            **2.      The evidence does not support the court's finding that Mr. Francisco acted in bad faith rather than inadvertently and carelessly.** …………………………………………………   20

      **D.      The sanctions are excessive under all the circumstances of the case**…..   27

   V.     **Conclusion** ………………………………………………………………   30

i

# TABLE OF AUTHORITIES

**Cases**

*Athena Cosmetics, Inc. v. AMN Distr.,* 2023 U.S. App. Lexis 1734
  (9th Cir. Jan. 24, 2023) ……………………………………………………    14

*Brooks v. Writers Guild of Am. W., Inc.* 762 F.2d 1349 (9th Cir. 1985) ……………    22

*Chambers v. NASCO, Inc.,* 501 U.S. 32 (1991) …………………………………    14, 27

*Colorado v. New Mexico,* 459 U.S. 310 (1984) …………………………………..    21

*Conant v. Credit Suisse Grp. Sec. (USA) LLC,* 831 Fed. Appx. 793 (9th Cir. 2020) ….    15

*Consumer Direct, Inc. v. Pentius, LLC,* 2023 U.S. Dist. Lexis 176092
  (C.D. Cal. Sept. 21, 2023) …………………………………………………    20

*Cooter & Gell v. Hartmax Corp.*, 496 U.S. 384 (1990) ………………………………    13

*Estate v. Blas v. Winkler,* 792 F.2d 858 (9th Cir. 1986) …………………………    16

*Fink v. Gomez,* 239 F.3d 989 (9th Cir. 2001) …………………………………..    2, 15, 17

*Gibson v. Credit Suisee Grp. Secs. (USA) LLC,* 773 Fed. Appx. 342 (9th Cir. 2018) ….    14

*Goodyear Tire & Rubber Co. v. Haeger,* 581 U.S. 101 (2017) ………………………..    14

*Grant v. City of Long Beach,* 96 F.4[th] 1255 (9th Cir. 2024) ………………………    19

*Harris v. Murray,* 761 F. Supp. 409 (E.D. Va. 1990) ………………………………    8, 23

*Hicks ex rel. Felock v. Felock,* 485 U.S. 624 (1988) …………………………………..    14

*In re Itel Sec. Litig. v. Itel,* 791 F.3d 672 (9th Cir. 1986) …………………………    17

*In re Keegan Mgmt., Co.,* 78 F,3d 431 (9th Cir. 1996) …………………………    16

*In re Plaza-Martinez,* 747 F.3d 10, 13 (1st Cir. 2014) ………………………    26, 28

*In re Yagman,* 796 F.2d 1165, *amended,* 803 F.2d 1085 (9th Cir. 1986) ……………    27

*Lahiri v. Universal Music & Video Distr. Corp,* 606 F.3d 1216 (9th Cir. 2010) ……….    20

*Lasar v. Ford Motor Co.,* 399 F.3d 1101 (9th Cir. 2005) ……………………………    13, 14

*Mackler Prods., Inc. v. Cohen,* 225 F.3d 136 (2d Cir. 2000) ............................. 14

*Mata v. Avianca, Inc.,* 678 F. Supp.3d 443 (S.D. N.Y. 2023) ......................... 18, 19

*Miller v. City of Los Angeles,* 661 F.3d 1024 (9th Cir. 2011) .............................. 14

*Nye v. United States,* 313 U.S. 33 (1941) ............................................... 14

*Park v. Kim,* 91 F.4th 610 (2d Cir. 2024) ............................................... 19

*Primus Auto. Fin. Servs., Inc. v. Batarse,* 115 F.3d 644 (9th Cir. 1997) .................. 16

*Republic of Philippines v. Westinghouse Elec. Corp.* 43 F.3d 65 (3d Cir. 1994).......... 29

*Roadway Exp., Inc. v. Piper,* 447 U.S. 752 (1980) ......................................... 16

*Schaye v. Dunn,* 2006 U.S. Dist. Lexis 11155 (D. Az. Mar. 20, 2006) ................... 29

*Thomas v. Pangburn,* 2023 WL 9425765 (S.D. Ga. Oct. 6, 2023) ........................ 19

*United States v. Agosto-Vega,* 731 F.3d 62 (1st Cir. 2013) ................................. 27

*United States v. Broussard,* 767 F. Supp. 1536 (D. Or. 1991) .............. 7, 11, 21, 23

*United States v. Fahlgren,* No. 2:24-CR-0213-WBS ...................................... 29

*United States v. Figueroa-Arenas,* 292 F.3d 276 (1st Cir. 2002) .......................... 27

*United States v. Harris,* No. 2:14CR76, 2016 WL 3190482 (E.D. Va. June 6, 2016) ... 9

*United States v. Horn,* 29 F.3d 754 (1st Cir. 1994) ...................................... 28

*United States v. Kouri-Perez,* 187 F.3d 1 (1st Cir. 1999) .................................. 28

*United States v. Santana,* 6 F.3d 1 (1st Cir. 1993) ......................................... 28

*Yagman v. Republic, Ins.,* 987 F.2d 622 (9th Cir. 1993) ................................. 25

*Zambrano v. City of Tustin,* 885 F.2d 1473 (9th Cir. 1989) ................................. 16

**Statutes**

18 U.S.C. 3509(d) ...........................................................  7, 9, 11, 21, 22

18 U.S.C. 3509(d)(2) .......................................................................  5

## **Other Authorities**

Congressional & Administrative News, 101st Cong. 2nd Sess., P.L. 101-647 …………… 7

E.D. Cal. Local Rule 110 ……………………………………………………………… 11

E.D. Cal. Local Rule 140(e) …………………………………………………………... 11

E.D. Cal. Local Rule 141.1(a) …………………………………………………………  5

E.D. Cal. Local Rule 141(a) ………………………………………………………3, 4

E.D. Cal. Local Rule 141.1(a) …………………………………………………………  5

E.D. Cal. Local Rule 180(e) ……………………………………………………… 11

E.D. Cal. Local Rule 184(a) ……………………………………………………… 11

E.D. Cal. Local Rule 430.1(j) ……………………………………………………… 13

Fed. R. Civ. P. 11(b)(2) ………………………………………………………… 19

H.R. 8754, Oct. 3, 1990 ………………………………………………………7, 17

Mass. R. Civ. P. 7 ………………………………………………………………… 19

Mass. R. Civ. P. 11 ……………………………………………………………... 19

## I.      Introduction

Attorney Andrew Francisco, through counsel, appeals the magistrate judge's order

sanctioning him after he filed a motion brief that contained a citation to a case that did not exist.

At the time, Mr. Francisco was an Assistant Federal Defender and counsel for defendant Daragh

Finbar Hayes in *United States v. Hayes,* No. 2:24-CR-0280-DJC.   After the government pointed

out the error in its brief, Mr. Francisco noted the correct case in his reply brief and, at the hearing

on the motion, he apologized for his mistake.   At that hearing, the magistrate judge appeared

upset at not only the improper citation but also in the tone and language Mr. Francisco used in

his briefs in challenging the court's action in sealing a defense brief via an email request by

government counsel, repeatedly referring to the defense's arguments as "inflammatory."  *See,*

*e.g.,* Appendix (App.) 68[1]  ("The Defense also makes what appear to be very inflammatory and

serious accusations . . . ."); App. 70 ("To take from that and to make inflammatory and extreme

arguments is very concerning to the Court."); App. 71 (counsel "is making arguments and

statements for which there's no basis and are incredibly inflammatory and incredibly concerning

to the Court."); App. 72 ("Those types of inflammatory arguments and accusations, those are the

types of things that undermine the integrity of our system.").

A week later, the magistrate judge issued an order to show cause why sanctions should

not issue against Mr. Francisco personally, quoting from the briefs and hearing transcript

concerning his citation to a non-existent case.   App. 81-88.   In his response submitted under

oath, Mr. Francisco again apologized for his mistakes and explained they were done

inadvertently in haste, not intentionally or in bad faith.  App. 89-111.   In a written order, the

magistrate judge nonetheless found that Mr. Francisco acted in bad faith, personally sanctioned

him $1,500, and ordered that the Clerk serve the sanction order on the District of Columbia bar

---

[1]      For the convenience of the Court, documents relevant to this appeal are included in an
attached Appendix.  This appeal brief cites to documents from the *Hayes* case that have not been
refiled in this docket by using the ECF numbers in the *Hayes* docket.

and State of California bar, as well as all on the district court and magistrate judges in the district. App. 112-39.

For the reasons that follow, counsel respectfully ask the Court to reverse the magistrate judge's sanctions order and finding that Mr. Francisco acted in bad faith. First, because the $1,500 sanction order is non-compensatory and punitive, it must be characterized as criminal in nature, triggering enhanced procedural protections, including a jury trial and proof beyond a reasonable doubt. Second, even if the sanctions order could be viewed as purely civil in nature, the magistrate judge's bad faith finding is neither supported by the evidence under any burden of proof nor satisfies the standard set forth in *Fink v. Gomez,* 239 F.3d 989 (9th Cir. 2001). Finally, the magistrate judge's $1,500 sanction order on a first offense for a single error is excessive and fails to take into consideration all the circumstances and the mitigating factors present here.

## II.   Issues for Review

A.   Whether the magistrate judge erred in imposing punitive monetary sanctions without the procedural protections required for sanctions that are criminal in nature.

B.   Whether the evidence supported the magistrate judge's finding that attorney Andrew Francisco acted in bad faith rather than carelessly in filing briefs with an erroneous citation to a non-existent case.

C.   Whether the sanctions imposed were excessive given the mitigation factors and all the circumstances of the case.

## III.   Statement of the Case

The magistrate judge's January 17, 2025 sanction order had its origins in passages contained in Mr. Francisco's motion to unseal a motion to compel discovery in *United States v. Hayes*. He filed the motion to compel, ECF No. 16, on October 25, 2024, and the motion to

unseal, App. 11-26, on November 21, 2024.  In between, there were disagreements between the parties over discovery, over a proposed protective order, and over a request to continue a hearing on the motion to compel.  ECF Nos. 20-24.

In his motion to unseal, Mr. Francisco sought to unseal the motion to compel he filed on October 25, 2024.  App. 11-26.  The motion to compel had been sealed by the Clerk's Office after an email request by an Assistant U.S. Attorney on October 25.  The Clerk issued a "notice of docket correction" directing Mr. Francisco to "file a Request to Seal along with a proposed order immediately."[2]  ECF No. 16.  Mr. Francisco immediately complied, asking to seal the entire document.  ECF No. 18.  However, recognizing that the sole concern was to protect "identifying information relat[ing] to a" purported "minor victim," a minute order issued denying the motion to seal without prejudice, suggesting a redacted motion be filed along with a sealed *un*redacted version.  ECF No. 19.  Mr. Francisco filed an amended motion to compel on October 31, redacting the questioned information.  ECF No. 25.[3]  The government filed an opposition to the motion on November 12, ECF No. 27, and Mr. Francisco filed a reply brief two days later. App. 1-10 (ECF No. 29).  Magistrate Judge Allison Claire heard the motion on November 15 and denied it without prejudice, without issuing a written order.  ECF No. 30.

At the hearing, Judge Claire noted that the parties had identified three categories of discoverable materials:  (1) reports that could be (and had been) readily disclosed; (2) materials depicting alleged child sexual abuse material (csam), which could only be viewed at a government facility under 18 U.S.C. § 3509(m); and (3) non-csam material that the government

---

[2]      While undersigned counsel appreciate that the Clerk decided to seal the document after an email request, a practice that can serve to protect defendants as well as witnesses or "victims," Eastern District Local Rule 141(a) provides that "Documents may be sealed only by written order of the Court, upon the showing required by applicable law."   As for unsealing, subdivision (e)(2)(3) authorizes "any person" to move to unseal documents, and documents may be ordered unsealed "upon a finding of good cause or consistent with the applicable law."

[3]      The original motion to compel, ECF No. 16, remains sealed and has not been seen by undersigned counsel.

would not allow the defense to see without a protective order.  At the time, the parties had not agreed on the terms of a protective order because the defense declined to use the term "victim" in a pretrial filing, preferring neutral terms such as "identified minor" or "minor subject."  *See* ECF No. 25 at 9:10-18.  Judge Claire acknowledged the defense's concerns ("I'm writing orders in some cases [where] sometimes I elect not to use that word") but denied the motion without prejudice because no binding authority held that use of the word "victim," before trial, violated the rights of a defendant.  "If there are discovery materials that you review that you think should not be protected, you can certainly – this is what without prejudice means – bring a motion saying this particular document should be produced. Otherwise, you folks just have to agree to terms of a protective order or you're not going to see this stuff."[4]  The parties stipulated to a protective order on November 25, which was ordered the following day.  App. 27-30.

Six days after the November 15 hearing, Mr. Francisco filed the motion to unseal that formed the basis of the court's sanctions order, App. 11-26 (ECF No. 32).  The motion sought to unseal the unredacted motion to compel on the basis that "the Clerk of the Court acted without legal authority in restricting public access to the document, and the government's informal request for the Clerk's intervention constituted an improper intrusion into judicial processes." App. 11.  Whatever feelings this may have engendered, Mr. Francisco was correct that the motion had not been sealed pursuant to a request under Local Rule 141, as the Local Rules require, but by action of the Clerk's Office based on an email request by the government.  *See* App. 23-24; *see also* ECF No. 17.  The government never filed a request to seal pursuant to the Local Rules, and Magistrate Judge Claire denied the sealing motion Mr. Francisco filed at the Clerk's suggestion.  ECF Nos. 18-19.  In response to Mr. Francisco's request that the court reconsider a week-long continuance it granted the government for the hearing on Mr. Francisco's original motion to compel discovery, Judge Claire issued an order that "electronic access to the

---

[4]     These quotations are taken from an audio recording of the hearing held November 15 before Judge Claire.

unredacted documents filed at ECF No. 16 will remain restricted," but only "[p]ending hearing on the motion to compel discovery."  ECF No. 24.  When Judge Claire heard the motion to compel on November 15, nobody asked to continue restricting access to document 16.  The matter was not discussed, but access to the unredacted document 16 remained restricted.

In his motion to unseal document 16, the unredacted motion to compel, Mr. Francisco also argued that document 16 "does not disclose any identifying information about the alleged minor victim, and Ninth Circuit precedent establishes that relational terms, gender pronouns, and general descriptors do not violate statutory privacy protections."  App. 12 (ECF 32, at 2:8-12), App. 21 (ECF 32, at 11:14-25 (citing multiple cases)).[5]  The motion had been sealed by the Clerk based solely on the government's representation that it "contain[ed] identifying information of a minor victim," ECF No. 17, a matter the Court had not yet decided (the only request to seal the document, filed by Mr. Francisco himself, was denied).  Mr. Francisco carefully and correctly laid this information out in his motion to unseal on November 21.  *See* App. 13-15 (ECF No. 32, pp. 3-5).  He correctly noted that, at the November 15 hearing, the court did not address his concern about whether the material – specifically, "relational terms and gender pronouns" of an otherwise-unidentified, alleged victim of the offense – should have been sealed in the first instance.  App. 15 (ECF No. 32, at 5:15-19).  He also noted, correctly, that the court did not address his concern about the Clerk's Office having placed the motion under seal without any party having made a formal request, as the local rule requires.  *Id.* (ECF No. 32, at 5:10-15).

To support his motion, Mr. Francisco pointed out that Local Rule 141.1(a) provides that "[a]ll information provided to the Court in a specific action is presumptively public," and that Local Rule 140(e) requires "an order on a sealing request" before the Clerk may seal a document.  He also noted that 18 U.S.C. § 3509(d)(2) requires that "papers to be filed in court

---

[5]    In addition to numerous published Ninth Circuit opinions, press releases from the EDCA U.S. Attorney's Office often refer to "minor victims" in sex offense cases using their gender pronouns and gendered terminology.

that disclose the name of or any other information concerning a child shall be filed under seal without the necessity of obtaining a court order."

The sanctions order arose because, in arguing that the quoted language was limited to "prevent the disclosure of specific identifying details, such as 'names and addresses,' rather than general descriptors," Mr. Francisco cited a case not in the Federal Reporter. As documented in the sanctions order at App. 113, the following excerpts from the brief could not be traced to the cited case in the Federal Reporter. First: "*United States v. Harris*," at "761 F. Supp. 409, 414 (D. D.C. 1991) (citing Congressman DeWine's remarks during the statute's enactment)." App. 16. Second: similar information at page 10, with a parenthetical quotation, "('The legislative history indicates that Congress intended to shield the names and addresses of child victims and witnesses from public disclosure.')." App. 20. Mr. Francisco also argued that the "district court's analysis in *Harris* is consistent with the common practice of using initials in court filings involving minors," App. 20, an assertion he supported by correctly quoting Federal Rule of Criminal Procedure 49.1(a)(3), which requires use of "minor's initials" in certain electronic or paper filings containing personal identifying information.

The government caught the error in its response to Mr. Francisco's motion. App. 34-35 (ECF No. 36, at 4:23-5:3).[6] The government also acknowledged that it never filed a request to seal the document under the Local Rules. It wrote, "There was nothing improper about counsel for the government alerting the Clerk's office (copying defense counsel) to identifying information concerning a minor victim contained in the defense motion, and request[ing] temporary restriction of public access until the order could be resolved." App. 33. Nor did the

---

[6] The government's response adopted an unusually harsh tone, saying that Mr. Francisco's claims were "false," "absurd," "sweeping and baseless," and employed an *ad hominem* attack: "This is not the first time defense counsel has filed a motion that included sweeping, baseless accusations against the government in this case." App. 33. At the only hearing on the matter, Judge Claire treated Mr. Francisco's arguments respectfully, noting that she herself sometimes eschewed use of the term "victim" when writing pretrial orders. She simply urged the parties to agree on a protective order, which they did shortly after the hearing.

government dispute that the question whether to continue restricting access to the unredacted motion had not been resolved at the hearing before Judge Claire, although the court had only restricted access "pending" that hearing.

Mr. Francisco acknowledged in his reply brief that the *Harris* case he cited "does not discuss the legislative history of 18 U.S.C. § 3509(d)." App. 37-45 (ECF No. 37, at 8 n.3).[7] He noted that the information he relied upon could be found in *United States v. Broussard*, 767 F. Supp. 1536, 1542 (D. Or. 1991). He said that the citation to *Harris* was "an inadvertent citation error [that] does not affect the substance of the defense's position that the legislative history supports a far narrower interpretation of § 3509 than the government asserts." App. 44 n.3.

Although neither Mr. Francisco nor anyone else seemed to have noted it, either at the hearing before Judge Claire on November 15 or the hearing before this Court on December 9, Mr. Francisco had already cited *Broussard* to support his argument about the legislative history, as well as the legislative history itself. He cited it in a footnote at page 5 of his reply to the government's opposition to his motion to compel filed on November 14, 2024. App. 5. He also quoted the case accurately: "The legislative history, although scant is helpful. In describing the confidentiality provision, Congressman DeWine explained that the '[b]ill makes it easier for a child to testify in court ... it forbids the release of the witness's name and address.' H.R. 8754, October 3, 1990. *See also* Congressional and Administrative News, 101st Cong. 2nd Sess., P.L. 101–647 (Special procedures include privacy and address protection to protect child witnesses by restricting the public release of any information identifying the child witness)." *Broussard*, 767 F. Supp at 1542.

Magistrate Judge Chi Soo Kim held a hearing on Mr. Francisco's motion to unseal on December 9, 2024. App. 46-74 (redacted reporter's transcript). Although Mr. Francisco had acknowledged his drafting error in his reply brief, citing to the authority he intended to cite,

---

[7]    Mr. Francisco's reply brief was filed on December 5, 2024, while he was attending a sentencing advocacy workshop in Atlanta, Georgia.

which he had put before the court in an earlier filing, the magistrate judge began the hearing not

by addressing the merits of Mr. Francisco's motion, but by addressing the citation error. App.

46-55. The court noted that the precise quotation in Mr. Francisco's motion, "The legislative

history indicates that Congress intended to shield the names and addresses of child victims and

witnesses from public disclosure," could not be found in *Broussard*. The court quoted a different

passage from *Broussard* having nothing to do with the issue before the court ("The legislative

history indicates that Congress was concerned about the increase in child abuse cases . . .") and,

after doing so, said, "I want to try to understand how the Defendant's response in Footnote 3 of

its reply, how it's an inadvertent citation error. It appears to the court to be a hallucinated or a

fictitious case." App. 49 (R.T. 4:22-25). Mr. Francisco said, "I sincerely apologize for the lack

of attention to those citations" but pointed out – correctly – that "the substance absolutely

supports the Defense position" about the legislative history. App. 50 (R.T. 5:11-13). The court

then quoted another inapposite sentence from *Broussard*, then quoted the sentence that Mr.

Francisco had cited to the court in his original moving papers when responding to the

government's opposition on November 14. App. 50, citing App. 5 n.3. That sentence said, as

noted above, that "Congressman DeWine explained that the bill makes it easier for a child to

testify in court. *It forbids the release of the witness's name and address.*" App. 50 (R.T. 5:21-

25) (emphasis added). The court failed to note, as discussed more fully below, that the language

it quoted was identical in substance to the legal argument Mr. Francisco had made in his moving

papers, including in the mistaken citation to *United States v. Harris.*

Moving on, the court asked, "But you're saying there is actually a *United States v. Harris*

case?" App. 51 (R.T. at 6:4-5). Mr. Francisco said that "there is" but that the one he had cited

"does not support the position regarding legislative history." App. 51 (R.T. 6:6-9).[8] Although

he had already acknowledged his citation error prior to the hearing, the Court continued: "So,

---

[8]    Although there is no *United States v. Harris* case at 761 F. Supp. 409, there is a different
"*Harris*" case, *Harris v. Murray*, 761 F. Supp. 409 (E.D. Va. 1990), which deals with conditions
of confinement.

Mr. Francisco, are you saying there's a different *United States v. Harris* case that deals with this specific statutory provision? So you are probably getting that the Court is concerned that there was a citation to a hallucination, like a case that's not actually real." App. 51 (R.T. 6:16-20). Again, Mr. Francisco apologized for his citation error, but explained (correctly) that "the substance is accurate and the substance was what I had directed the Court's attention to in my initial filing." App. 51 (R.T. 6:23-7:1).

Although not noted at the hearing, there is a case entitled *United States v. Harris*, with a different citation, No. 2:14CR76, 2016 WL 3190482 (E.D. Va. June 6, 2016), that specifically addresses 18 U.S.C. § 3509(d), the statute at issue. A person researching section 3509(d) on Westlaw would quickly find this case by searching section 3509(d) and a term such as "disclosure." There are only 49 reported cases listed under the "Notes of Decisions" under the Westlaw U.S. Code Annotated entry for 18 U.S.C. § 3509, according to a search done by counsel on February 10, 2025. *Harris*, a district court Memorandum Order, does not discuss the legislative history of section 3509, but does pertain to "disclosure of the names, or of other information concerning victimized children" who had testified at trial. *Id.* at *1. The *Harris* case is also discussed in publicly available databases, including Casetext, and can be found through general internet searches. The citation is different from that in Mr. Francisco's motion, but the title is the same and the case pertains to disclosure of identity information under section 3509(d) (in *Harris,* defendant's wife moved to disclose the names of children and witnesses who had testified at defendant's trial so that she could use them in a divorce and custody proceeding).

The court said, "I don't understand how this could happen. It's – inadvertent citation errors are things like the wrong page is cited or something like that." App. 52 (R.T. at 7:19-21). The court also said (incorrectly) that *Broussard* "doesn't stand for the propositions that the Defense argues and the quoted language is different, so that is very concerning to the Court." App. 53 (R.T. 8:1-3). "And the Defense's response to that does not appear to be accurate and it appears to be misleading and that is very concerning to the Court." App. 53 (R.T. 8:7-9). Mr. Francisco apologized a third time ("Defense counsel sincerely apologizes for the confusion and

the poor attempt at remedying the issue, Your Honor") but again explained that his goal was to "redirect the discussion to the legislative history." App 53, 54 (R.T. 9:1-2; 8:13-25). *Broussard* in fact quotes the legislative history, specifically Congressman DeWine's statement that the legislation forbids disclosure of witness "names and addresses."

Defense counsel's concerns about the Clerk sealing the document without requiring the government to file a request to seal were entirely legitimate. In another criminal case in this district, defense counsel recently moved to recuse a district judge who stayed a magistrate judge's release order based solely on the government's *ex parte* request, made without seeking input from defense counsel, and which was not supported by a formal appeal of the release order. *See United States v. Millett,* 2:24-CR-00267, ECF No. 48.

Although the court acknowledged at the hearing that it had read the reply brief filed on November 14, 2024 (App 1-10), in which Mr. Francisco first cited *Broussard*'s quotation of the legislative history, ECF No. 54 (R.T. 9:23-10:2), the court appears to have overlooked the brief's *Broussard* footnote. Rather than note that portion of the brief, the court focused on Mr. Francisco's concern about the Clerk sealing the motion at the government's informal request. The court noted that "Judge Claire held a hearing on November 15th and she issued her order and denied the motion to compel." App. 55 (R.T. 10:6-9). But Judge Kim erred in assuming that Judge Claire had considered the defense's concerns about the Clerk sealing the motion without a formal request to seal. The court said, "So given that that was raised in the motion to compel, that's one issue the court has considered." App. 55 (R.T. at 10:10-11). However, as noted above, the court had only sealed the document "pending" the November 15 hearing, and nobody addressed the matter of sealing at that hearing. In other words, the issue was not one the court had considered, and Mr. Francisco was within his rights to raise it, as he had done in his motion. The court also noted, and the parties agreed, that their protective order covered the use of any language describing the relationship, if any, between the defendant and the person the government identified as a victim.

The court also ruled that the Clerk's Office did not violate Local Rule 140(e) by sealing the motion to compel at the government's request. App. 66 (R.T. 21:2-19). The court criticized Mr. Francisco for expressing concern about the Clerk bypassing Rule 140(e), calling his arguments "inflammatory" and unprofessional. App. 69 (R.T. 24:14-23). The court said, "it's completely baffling to the Court why these arguments were even made to begin with. And not only were they made, they were made twice." App. 71 (R.T. 26:10-13).

The quoted language from *Broussard*, which the court read at the hearing, which Mr. Francisco had cited in another filing, and which he cited to the court in his reply brief, was effectively the same as the argument Mr. Francisco had made in his opening brief, "that the statute was designed to prevent the disclosure of specific identifying details, such as 'names and addresses.'"

On December 16, 2024, a week after the hearing, the court issued an "Order to Show Cause Why Sanctions of Other Appropriate Disciplinary Action Should Not Issue Against Assistant Federal Defender Andrew Francisco." App. 81-88. The order quoted portions of the transcript of the hearing concerning the mistaken citation to *United States v. Harris*, including Mr. Francisco's apologies and his acknowledgement that "it was cited in error." App. 87. The order cited Eastern District Local Rule 110, which allows courts in this district to impose sanctions "within the inherent power of the Court"; Local Rule 180(e), which obligates attorneys to comply with California standards of professional conduct; and Local Rule 184(a), which authorizes a criminal contempt proceeding. App. 87-88.

The OSC gave Mr. Francisco only two days to file a response. He nonetheless timely filed a response, taking "full responsibility for" his errors and acknowledging his error in citing *United States v. Harris*, a case that does not exist. App. 89. He explained that he had meant to cite *Broussard* and acknowledged that the precise quote was not in the cited *Broussard* opinion. App. 90. *Broussard* does discuss the "legislative history" of section 3509(d) and does quote from it in stating that the statute "forbids the release of the [child] witness's name and address." *Broussard*, 767 F. Supp. at 1542.

Mr. Francisco noted that he had filed the motion immediately before a status conference held before the district judge on November 21 and that, in his haste, he "did not ask for any cite check review." App. 90 (ECF No. 51, at 2:21). He said, "My citation to *Harris* was inadvertent and I have wracked my memory to try to recall where I looked to come up with it, to no avail." *Id.* App. 91 (ECF No. 51, at 3:5-6). "It was an inadvertent drafting error I cannot begin to explain." App. 91. He again explained that he had intended to cite the language from *Broussard* discussing the statute's legislative history. He attached a record of his Westlaw search history showing that he had accessed *Broussard* five separate times before the hearing, three of those times (10/26/24, 11/13/24, and 11/14/24) before he filed the motion to unseal, conducted numerous searches related to the statute's legislative history, and reviewed the statute's Notes of Decisions. App. 91, 98-111 (Exhibit B). He said although he had checked *Harris* after reading the government's response to his motion, he neglected "to compare the quotes I entered with any language in *Broussard* and deeply regret not doing so." App. 91 (ECF No. 51, at 3:20-22). He noted that he filed a Notice of Errata to correct the record before the court issued its OSC, acknowledging his errors and apologizing to the court. App. 92 (ECF No. 51, at 4:9-12), referencing App. 75-80 (ECF No. 47). He said he had made a human error rather than an intentional one. *Id.* He detailed remedial steps he had taken: he had "implemented specific measures to prevent similar errors in the future, including enhanced proofreading protocols, citation verification using reliable legal databases, and improved time management to allow for thorough final reviews, including by others, before filing." App. 93 (ECF No. 51, at 5:19-23). He concluded with yet another apology to the Court and wrote, "I remain committed to upholding the highest standards of professionalism, accuracy, and candor in all future proceedings before this court, while continuing to represent my clients zealously and ethically, consistent with my obligations to the court, the expectations of the Professional Conduct Rules, and my role as defense counsel." App. 94, (ECF No. 51, at 6:7-12).

On January 17, 2025, the magistrate judge issued its order sanctioning Mr. Francisco. App. 112-39. Through undersigned pro bono counsel, Mr. Francisco moved to reconsider the

sanction order.  App. 140-41, 142-43.  In a memorandum of points and authorities, counsel

argued that the magistrate judge applied the incorrect legal standard, that the evidence did not

show that Mr. Francisco acted in bad faith, and that the sanctions imposed were excessive.  App.

140-66.  Six weeks later, after deeming the matter submitted without a hearing, the magistrate

judge denied the motion to reconsider in a written order filed April 9, 2025.  App. 167-77.  Mr.

Francisco timely appealed the magistrate judge's final sanction order and denial of

reconsideration.  App. 178-79; *see* E.D. Cal. Rule 430.1(j).

## IV.    Argument

**The Court Should Reverse The Magistrate Judge's Sanction Order And The
Finding that Mr. Francisco Acted in Bad Faith.**

### A.    Standard of review

A court's decision to impose sanctions under its inherent authority is reviewed for abuse

of discretion.  *Lasar v. Ford Motor Co.*, 399 F.3d 1101, 1110 (9th Cir. 2005).  A "court would

necessarily abuse its discretion if it based its ruling on an erroneous view of the law or on a

clearly erroneous assessment of the evidence."  *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384,

405 (1990).  The question whether sanctions are civil or criminal in nature is a legal question

reviewed de novo.  *Lasar,* 399 F.3d. at 1110.

### B.    The order did not provide required procedural protections for sanctions
that were criminal rather than civil in nature.

The magistrate judge imposed a $1,500 sanction on Mr. Francisco based on the court's

conclusion that his citing an erroneous case in a brief and his subsequent explanations, which the

magistrate judge found were inadequate and amounted to bad faith.  "The due process

requirements for contempt citations and monetary sanctions are similar."  *Lasar,* 399 F.3d at

1109 n.5.  For sanctions that are civil in nature, due process requires notice and an opportunity to

be heard.  *Id.* at 1110.  Where sanctions are criminal in nature, additional procedural protections

may apply, such as the right to a jury trial and proof beyond a reasonable doubt.  *Id.*  In general,

a sanction that is compensatory or designed to coerce compliance is civil in nature while a

sanction is deemed "criminal if it is 'punitive' and for the purpose of 'vindicating the authority of the court.'" *Id.* A fine made payable to the Court rather than to another party is a factor indicating the fine is punitive. *See Hicks ex rel. Felock v. Felock,* 485 U.S. 624, 632 (1988) ("If the relief provided is a fine, it is remedial when it is paid to the complainant, and punitive when it is paid to the court . . . ."). "If any portion of the fines is non-compensatory, then that portion would be criminal in nature and would be subject to the additional due process protections of proof beyond a reasonable doubt." *Gibson v. Credit Suisse Grp. Secs. (USA) LLC*, 773 Fed. Appx. 342, 346 (9th Cir. 2018) (unpublished); *see also Hicks ex rel Felock,* 485 U.S. at 638 n.10 ("If both civil and criminal relief are imposed in the same proceeding, then the criminal feature of the order is dominant and fixes its character for purposes of review.") (quoting *Nye v. United States,* 313 U.S. 33, 42-43 (1941)); *Goodyear Tire & Rubber Co. v. Haeger,* 581 U.S. 101, 108 (2017) (in imposing civil sanctions under the court's inherent powers, a compensatory civil sanction "may go no further than to redress the wronged party 'for losses sustained;' it may not impose an additional amount as punishment for the sanctioned party's misbehavior").

Here, the magistrate judge's $1,500 order was punitive. It was made payable to the court and was not fashioned to compensate opposing counsel for costs resulting from the purported misconduct. *Cf. Lasar,* 399 F.3d at 1111 (finding fines imposed by court qualified as civil sanctions "because they were designed to compensate Lasar for unnecessary costs and attorney's fees and to reimburse the district court for the jury costs incurred as a result of the mistrial"); *Athena Cosmetics, Inc. v. AMN Distrib.*, 2023 U.S. App. Lexis 1734, at *4 (9th Cir. Jan. 24, 2023) (holding fines imposed on attorney were civil because "this fine only compensated AMN for a direct consequence of Lang's actions"). Rather, the monetary sanction must be deemed criminal in nature as it was clearly imposed to punish Mr. Francisco and deter future misconduct. *See Miller v. City of Los Angeles,* 661 F.3d 1024, 1030 (9th Cir. 2011) (stating that a $63,687.50 non-compensatory sanction is akin to criminal contempt and cannot be imposed without procedures applied in criminal cases); *Mackler Prods., Inc. v. Cohen,* 225 F.3d 136, 139 (2d Cir. 2000) (reversing $2000 non-compensatory sanction because 'the District Court erred in imposing

the punitive sanction without providing the procedural protections employed in the criminal process'"); *Conant v. Credit Suisse Grp. Sec. (USA)LLC,* 831 Fed. Appx. 793 (9th Cir. 2020) (unpublished) (vacating district court's $6000 monetary sanctions per attorney for misconduct in the underlying case where the "fines were at least partially non-compensatory"). Because the magistrate judge did not provide the required procedural protections before imposing criminal sanctions, that is, a jury trial and proof beyond a reasonable doubt, the Court should vacate the magistrate judge's sanction order and remand for further proceedings.

> **C.    The evidence does not support the magistrate judge's finding that Mr. Francisco acted in bad faith rather than carelessly in inadvertently submitting a brief citing a non-existent case rather than the intended, correct case.**

The court found that Mr. Francisco "knowingly made inaccurate and misleading statements" in a reply brief filed on December 5, 2024 and at a hearing on December 9, 2024. App. 124. The court rejected his explanation and found his actions to be knowing and deliberate rather than inadvertent. *Id.* Specifically, the court concluded that Mr. Francisco "knowingly ma[d]e a false statement of fact or law" and that he "knowingly misquote[d] . . . the language of a book, statute, decision or other authority."[9] *Id.* In its order, the court states that it "ultimately finds that Mr. Francisco made knowing and willful misrepresentations with the intent to mislead the Court, which violated the standards of professional conduct, including the duty of candor to the court, and demonstrates bad faith." App. 128. The court's finding rested on Mr. Francisco's citation to the non-existent *United States v. Harris* and on his mistake in placing quotation marks around his paraphrase of the legislative history discussion in *Broussard.* The court's order did not state what burden of proof the court applied in reaching its decision.

---

[9]    As discussed in the next section of this brief, he did neither of these things.

1. **The magistrate judge's findings do not satisfy the "bad faith" standard under *Fink v. Gomez*.**

The magistrate judge rested its sanction order on its inherent authority and local rule 180(e).  App. 134, 169.  The Supreme Court has instructed that "[b]ecause of their potency, inherent powers must be exercised with restraint and discretion."  *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991).  The Ninth Circuit explored the conditions in which sanctions on an attorney are permissible under the court's inherent powers in *Fink v. Gomez,* 239 F.3d 989 (9th Cir. 2001).  There, the Court held "that an attorney's reckless misstatements of law and fact, when coupled with an improper purpose . . . are sanctionable under a court's inherent power."  *Id.* at 994.  Nonetheless, sanctions should be reserved for "serious breaches."  *Zambrano v. City of Tustin,* 885 F.2d 1473, 1485 (9th Cir. 1989)

*Fink* makes clear that the Court has authority under its inherent power to impose sanctions only when an attorney has acted in bad faith, that is, for an improper purpose.  The Court in *Fink* noted that the Supreme Court discussed what "bad faith" means in *Chambers* and *Roadway Exp., Inc. v. Piper,* 447 U.S. 752, 765 (1980).  In *Chambers*, the Court used "bad faith" to mean "delaying or disrupting the litigation or by hampering enforcement of a court order."  *Fink*, 239 F.3d at 992.  *Roadway* "treated bad faith as being distinct from delay, disruption, and disobeying a court order," instead using it to mean "disobedience, bad faith, and vexatious, wanton or oppressive actions."  *Id.*  Among examples, the Court quoted *Primus Auto. Fin. Servs., Inc. v. Batarse,* 115 F.3d 644, 648 (9th Cir. 1997), which held that "a finding of bad faith is warranted where an attorney 'knowingly or recklessly raises a frivolous argument . . . for the purpose of harassing an opponent.'"  239 F.3d at 993*; see also Zambrano,* 885 F.2d at 1484 (reversing sanctions on attorney for violating district court's local rules where "there is no indication in the record that counsel were guilty of anything more than simple negligence"); *In re Keegan Mgmt. Co.,* 78 F.3d 431, 436 (9th Cir. 1996) ("Bad faith is present when an attorney knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent.") (quoting *Estate of Blas v. Winkler*, 792 F.2d 858, 860 (9th

Cir. 1986)).  Synthesizing these principles, the Ninth Circuit held in *Fink* that inherent-power sanctions "are justified when a party acts *for an improper purpose*."  239 F.3d at 992 (citing *In re Itel Sec. Litig. v. Itel.*, 791 F.3d 672, 675 (9th Cir. 1986) (emphasis added)).

    In this case, the magistrate judge made no finding that Mr. Francisco harbored an improper purpose as Ninth Circuit law requires.  The court found that "Mr. Francisco submitted a fictitious or non-existent case and quotation in his written motion to unseal"; that he "knowingly made inaccurate and misleading statements in his written reply"; and that he "knowingly made inaccurate and misleading statements at the December 9, 2024 hearing." App. 124.  "The Court further finds that Mr. Francisco's inaccurate and misleading statements were not inadvertent as claimed, but knowing and made in bad faith."  App. 124.  Defense counsel believe these findings are incorrect, as discussed below.  Even if the findings were supported by the record, however, and that Mr. Francisco in fact made up a fake case and a fake quotation, or used a program involving AI (artificial intelligence) to flesh out his arguments, then failed to acknowledge doing so, sanctions under the court's inherent authority would still be improper absent a finding that he acted for an improper purpose, such as to delay or disrupt the proceedings, harass an opponent, or gain some improper litigation advantage.  *See Fink,* 239 F.3d at 994.

    The magistrate judge's order, and the order denying reconsideration, make no claim and no finding that Mr. Francisco acted for an improper purpose, as the law requires.  He had nothing to gain for himself or for his client by citing a made-up case to support an otherwise accurate statement about legislative history rather than the correct case.  He cited *"United States v. Harris"* to support his argument that the legislative history of section 3509(d) showed the bill "was designed to prevent the disclosure of specific identifying details, such as 'names and addresses,' rather than general descriptors."  App. 16.  In fact, the legislative history says exactly that: "Congressman DeWine explained that the '[b]ill . . . forbids the release of the witness's name and address.'" *Broussard*, 767 F. Supp. at 1542, citing H.R. 8754, October 3, 1990.  Here is a picture of the quoted language from the Congressional Record:

CONGRESSIONAL RECORD—HOUSE

...of this bill we will have in Federal law a very tough, very firm standard in this area.

Let me cite a couple of specific things the bill does. It allows a child to testify in a room other than the courtroom to reduce emotional stress. It allows the testimony of a child to be taken by recorded deposition for use at trial. It allows the use of anatomical dolls to describe sexual abuse, and forbids the release of a child witness's name and address.

This bill of rights also helps ensure speedy trial in a case where a child is a...

Mr. Francisco and his client stood to gain no advantage in citing to the court an accurate statement of the legislative record even by citing the wrong case, or an AI-hallucinated one. Nobody was misled, nobody was deceived, nobody was cheated, no delay ensued, nothing wanton or oppressive was done, and no court order was violated. There could be no strategic advantage in citing an erroneous district court case (*Harris*) rather than the correct one (*Broussard*), which had already been known by and correctly cited by defense counsel in a prior brief. While the court was not persuaded by the citation or argument, at no point has any person disputed that Mr. Francisco accurately recounted the Congressman's statement that section 3509(d) "forbids the release of a child witness's name and address," the sole reason for which he had cited the erroneous *Harris* case.

In ordering sanctions, the court cited other civil cases involving "the submission of fake opinions," App. 127-28 & 128 n.5 citing, *inter alia, Mata v. Avianca, Inc.*, 678 F.Supp.3d 443, 448-49 (S.D. N.Y. 2023). Even if Mr. Francisco had deliberately manufactured a fake case or used a tool of artificial intelligence as the court speculated, his conduct falls far short of cases in which attorneys submitted entire briefs prepared using artificial intelligence. In *Mata*, the questioned briefs cited six fictitious cases and were generated using ChatGPT; when confronted, the attorneys doubled-down by submitting fabricated judicial opinions containing additional false

citations; they then did not correct the record when given the opportunity.  The court found that attorney LoDuca had not read any of the cases he cited in his offending brief; had sworn to the truth of an affidavit "with no basis for doing so"; and lied to the court that he was going on vacation when he was not.  *Id.* at 464; *see also Grant v. City of Long Beach*, 96 F.4th 1255, 1256 (9th Cir. 2024) (striking appellate brief and dismissing civil appeal where appellants' brief was "replete with misrepresentations and fabricated case law" and "misrepresent[ed] the facts and holdings of numerous other cases cited in the brief").  Only then did the court order sanctions.

The *Mata* sanctions order rested on Federal Rule of Civil Procedure 11(b)(2), which has no analogue in the Federal Rules of Criminal Procedure.  In imposing sanctions, the *Mata* court noted that "[a]n attorney violates Rule 11(b)(2)," which provides that attorney "certifies" the validity and sincerity of their citations and arguments, "formed after an inquiry reasonable under the circumstances," when "existing caselaw unambiguously forecloses a legal argument."  678 F.Supp.3d at 460; *see also Park v. Kim,* 91 F.4th 610, 615 (2d Cir. 2024) (referring attorney who also repeatedly violated discovery orders despite court warnings to court's Grievance Panel as "it appears that Attorney Lee made no inquiry, much less the reasonable inquiry required by Rule 11 and longstanding precedent, into the validity of the arguments she presented"); *Smith v. Farwell,* 2024 WL 4002576 (Mass. Super. Feb. 12, 2024) (sanctioning attorney under Mass R. Civ. P. 11 and 7 for using Chat GPT to cite multiple fake cases in a brief).  No such certification exists under the Criminal Procedure Rules.

More important, as noted above and below, the point of law (though not the exact quote) Mr. Francisco identified when incorrectly citing *Harris,* rather than *Broussard,* was both factually and legally accurate.  When confronted with error, he didn't compound his error by submitting additional fake cases as the attorney did in *Mata.* And unlike the sanctioned attorney in *Mata* who did not correct the record, Mr. Francisco corrected himself repeatedly, at the hearing, in an errata, and in a response to the OSC.

In *Thomas v. Pangburn*, 2023 WL 9425765 (S.D. Ga. Oct. 6, 2023), cited in the order at App. 127, a *pro se* plaintiff cited ten cases "that simply did not exist," then failed to explain their

origins in "response to a direct order" from the court. *Id.* at \*5. Again relying on Rule 11 of the Civil Rules, the court found that plaintiff had an improper purpose because he failed to explain how he got the citations and that he "engaged in bad faith by 'delaying or disrupting the litigation [through the fictitious citations and by] hampering enforcement of a court order.'" *Id.* The court nevertheless declined to order money sanctions and instead dismissed plaintiff's action as a sanction, while noting that it had already ruled that the case should be dismissed on a different ground. *Id.* In relying on two civil cases, the court also failed to note that criminal advocacy is substantially different from civil advocacy and that courts routinely urge restraint in imposing sanctions against criminal defense counsel, just as they do against prosecutors. See Section IV(C)(2), *infra*, at 26-27.

> **2.**     **The evidence does not support the court's finding that Mr. Francisco acted in bad faith rather than inadvertently and carelessly.**

Even if the monetary sanctions here are deemed civil in nature so as not to trigger the full panoply of procedural protections that apply to criminal cases, the sanctions order must be based on clear and convincing evidence. At least one district court has noted that "[t]he Ninth Circuit has never resolved 'whether a bad faith finding must be supported by clear and convincing evidence, or whether a lesser quantum of evidence suffices' for the purposes of imposing sanctions pursuant to a court's inherent authority." *Consumer Direct, Inc. v. Pentius, LLC,* 2023 U.S. Dist. Lexis 176092, at \*17 (C.D. Cal. Sept. 21, 2023); *see also Lahiri v. Universal Music & Video Distr. Corp.*, 606 F.3d 1216, 1222 (9th Cir. 2010) (affirming a sanctions order after similarly declining to resolve the question "because the district court's bad faith finding [was] supported by clear and convincing evidence.") The Ninth Circuit also applied the clear and convincing standard for a finding of civil contempt. *See Ahearn ex rel. NLRB v. Int'l Longshore & Warehouse Union, Locs. 21 & 4,* 721 F.3d 1122, 1129 (9th Cir. 2013). The same standard should apply here. To satisfy the clear-and-convincing-evidence standard, there must be sufficient proof to produce "in the ultimate fact-finder an abiding conviction that the truth of its

factual contents are [sic] 'highly probable.'"  *Colorado v. New Mexico,* 459 U.S. 310, 316

(1984).

The record, however, does not support the finding that Mr. Francisco's erroneous citation

was done intentionally, deliberately, or in bad faith under the clear and convincing evidence

standard (or under any standard of proof).  In his brief, Mr. Francisco cited eight cases; one of

these cases, *United States v. Harris,* 761 F. Supp. 409, 414 (D.D.C. 1991), does not exist.  The

court also noted that the defense motion includes a direct quote, "The legislative history indicates

that Congress intended to shield the names and addresses of child victims and witnesses from

public disclosure," that is not found in any other cited case.  As noted earlier, Mr. Francisco had

already cited the correct case in a prior brief, *United States v. Broussard*, 767 F. Supp. 1536,

1542 (D. Or. 1991).  There could be no conscious purpose in erroneously citing one district court

case, *Harris*, rather than the correct one, *Broussard.*  The quote in the defense's motion was an

error because it was set out as a direct quote rather than a paraphrase.  But it would have been

entirely proper for defense counsel to have said the same thing with a citation to *Broussard.*

For example, instead of arguing as he did in the motion to unseal:

> The legislative history of § 3509(d) supports this interpretation.  In *United States v. Harris,* the court examined the statute's background, citing Congressman DeWine's remarks that emphasized preventing the disclosure of names and addresses of child victims or witnesses. 761 F. Supp. At 414.  This focus indicates that Congress aimed to shield specific identifying information, not to impose broad restrictions on all descriptive terms.  *Id.*("The legislative history indicates that Congress intended to shield the names and addresses of child victims and witnesses from public disclosure.").

App. 20.  Mr. Francisco could have made the same argument citing *Broussard* and language

from that case, such as by writing:

> The legislative history of § 3509(d) supports this interpretation.  In *United States v. Broussard,* the court examined the statute's background, citing Congressman DeWine's remarks that emphasized preventing the disclosure of names and addresses of child victims or witnesses. 767 F. Supp. 1536, 1542 (D. Or. 1991).  This focus indicates that Congress aimed to shield specific identifying information, not to impose broad restrictions on all descriptive terms.  The legislative history indicates that Congress intended to shield the names and addresses of child victims and witnesses from public disclosure.  *See id.* (quoting

DeWine as explaining that the law "forbids the release of the witness's name and address.").

By citing the wrong case instead of *Broussard* and using an inaccurate quote, the brief was sloppy. But the argument and key points are supported by a case that defense counsel had already obtained through Westlaw legal research. *See* App. 98-111 (Exhibit B to Response to OSC). Contrary to the sanction order's conclusion, App. 129, it does provide support for the argument that section 3509(d) should be construed narrowly to restrict only information that truly identifies the child victims, such as their names and addresses. Of course, the court had every right to reject the argument on the merits, as it did. Legislative history, especially that of a single legislator, is often viewed as carrying little weight. *See Brook v. Writers Guild of Am. W. Inc.,* 762 F.2d 1349, 1356 (9th Cir. 1985) ("The remarks of legislators opposed to legislation are entitled to little weight in the construction of statues."). And the court could interpret *Broussard* more broadly (as it did) as holding "that information that would identify a child victim should not be publicly disclosed under § 3509(d)." App. 129. But citing the legislative history as Mr. Francisco did was an appropriate defense argument. It is one thing to say an argument is weak or a quotation is taken out of context and reject it; it is entirely another to conclude that it was improper to even make the argument, and that the making of it amounted to misconduct. Mr. Francisco's error was citing the wrong case and placing quotation marks where they should not have been.

Neither the reply brief, the errata, nor statements made at the hearing, however, support the sanction order's conclusion that Mr. Francisco's errors were deliberately made with an intent to mislead or done in bad faith. *See* App. 128-29, 132 (sanctions order); App. 170 (order denying reconsideration). The reply brief, App. 37-45, which was submitted while Mr. Francisco was at a conference in Atlanta, was inartfully written, presumably by failing to recognize the seriousness of including an erroneous case and quotation in his initial motion. It would have been more direct and better to say that *Harris* does not exist and to directly correct the inaccurate quotation. But the reply brief does acknowledge that it cited the wrong case

(*Harris*) and directs the court to the correct case (*Broussard*). As a result, there is no reason to believe that it was intended to mislead the court as the magistrate judge concluded. How could it? The court already knew that *Harris* did not exist when the government pointed it out in its opposition brief; the defense simply redirected the court to the correct case.

Similarly, the errata acknowledged counsel's errors and provided the court with corrections to the motion to fix the *Harris* citation and erroneous quote. App. 75-80. Although the court found the reply brief and errata's apologies and conclusion to be "inadequate," App. 130, neither lend support to the sanction order's conclusion that the erroneous citation and quote in the initial brief was done intentionally or in bad faith. To the contrary, they show that Mr. Francisco did not view the error to be a serious one because it was an accidental error rather than a deliberate misrepresentation. He knew what he had meant to say, and he knew that he had said it.

Likewise, the sanction order gives short shrift to Mr. Francisco's apologies and acknowledgment of his errors at the motion hearing. In denying reconsideration, the magistrate judge stated that "Mr. Francisco does not challenge the Court's findings that serve as the basis for its conclusion that Mr. Francisco's statements in the reply brief and at the hearing were knowingly made to mislead the court." App. 170. This is not the case. In fact, the crux of the entire reconsideration motion is that any errors in Mr. Francisco's briefs and oral explanations were inadvertent and sloppy--not intentional, misleading, or done for any nefarious purpose.

In particular, the magistrate judge notes that Mr. Francisco acknowledged filing his reply brief after reviewing the government's opposition as well as the *Harris v. Murray* and *United States v. Broussard* cases. App. 170-71. Of course, he had. His reply brief (inaptly) acknowledged the government's observation that *United States v. Harris* did not exist and directed the court to the correct case on point, *Broussard.* App. 44, at n.3. It does not follow, however, as the court concludes, that he necessarily rechecked the exact language in *Broussard* to make sure the quote he attributed to it in a footnote in his reply brief was accurate. Rather, while at a conference in Atlanta, he likely perused *Broussard* to confirm *Broussard* was the case

that cited the applicable legislative history that he meant to cite, without focusing on the exact quoted language. Again, a careless error made in haste, not a deliberate falsehood made to gain advantage.

At the December 9 hearing, Mr. Francisco brought the statute's legislative history with him but not a copy of *Broussard.* App. 92. He admitted his mistakes and apologized repeatedly at the December 9 hearing, App. 50 (R.T. 5:11-13) ("I sincerely apologize for the lack of lack of attention to those citations"), App. 51 (R.T. 6:25-7:1) ("I do apologize for the citation error, Your Honor, the misquote."), App. 54 (R.T. 9:1-2) ("Defense counsel sincerely apologizes for the confusion and the poor attempt at remedying the issue, Your Honor."), in the errata, App. 76 ("Counsel apologizes to the Court . . . ."), and in his response to the order to show cause. App. 93 ("I deeply regret my citation and quotation errors and the resulting confusion they have caused. I likewise regret the time this matter has taken from the Court's attention and resources. I take full responsibility for the oversights and recognize the gravity of my mistakes.").

Counsel's response to the OSC was submitted under penalty of perjury. App. 89. In the response, counsel takes "full responsibility" for his errors, but insists that the *Harris* citation error "was an inadvertent drafting error" that he cannot explain. App. 91.[10] The sanction order

---

[10]    Although Mr. Francisco stated he did not use artificial intelligence or Chat GPT, it is worth noting that AI has become so pervasive that persons now use it without knowing it. Both Google and Microsoft now integrate A.I. into their search engines by default, influencing results and generating responses alongside traditional search listings – every question put to Google or Safari now gives an answer generated by AI.

Westlaw also features its own A.I. powered tool called CoCounsel. https://legal.thomsonreuters.com/en/c/westlaw/westlaw-precision-generative-ai?searchid=TRPPCSOL/Google/LegalUS_RS_Westlaw_Main_Search_Brand-All_US/AI&chl=ppc&cid=4989046&sfdccampaignid=701PA00000HnC4jYAF&ef_id=CjwKC AiAh6y9BhBREiwApBLHCxZSjbMjThLgrP1lc-0dN_QlnzOlz_V4H4mE5YOHJQNamvwUaQIK7RoCr-UQAvD_BwE:G:s&s_kwcid=AL!7944!3!681703130762!e!!g!!westlaw%20ai&gad_source=1&gbraid=0AAAAADtqfRf2pI1VFZAZBGp45eTmof42v&gclid=CjwKCAiAh6y9BhBREiwApBL HCxZSjbMjThLgrP1lc-0dN_QlnzOlz_V4H4mE5YOHJQNamvwUaQIK7RoCr-UQAvD_BwE It also has something "Legal Generative AI." Even Microsoft Word now has an AI drafting

simply does not provide evidence to support its conclusion that the errors were in fact done knowingly with intent to mislead, in bad faith, or for an improper purpose.

In this context, the Ninth Circuit's decision in *Yagman v. Republic Ins.,* 987 F.2d 622 (9th Cir. 1993), is instructive. The Court there reversed sanctions where the attorney's phrasings were careless but the evidence did not support a finding that he acted with an intent to mislead or in bad faith:

> Judge Real's petition for certiorari was carelessly described, but the citation to the legal action specified was given. It was a legal proceeding that could have seriously affected Yagman's rights. By filing the petition, Judge Real sough review of an opinion which vacated his $250,000 sanction against Yagman and ordered the recusal of Judge Real from the matter. We conclude that Yagman's characterization of the petition for certiorari was careless and slovenly legal work. However, taken as a whole, the motion which contained the correct citation to the petition was not actually misleading. It plainly identified the controversy upon which Yagman relied. It was not sanctionable under Rule 11.
>
> ***
>
> The district court held that Yagman's failure to clarify his statement was in bad faith and therefore sanctionable. It is clear that Yagman's motion was based upon Judge Real's petition for certiorari to the Supreme Court. There is no indication in the record before us that Yagman acted in bad faith or intended to mislead the court by his careless characterization of the petition. Accordingly, a sanction based upon the court's inherent powers is not sustainable here.

*Id.* at 628-29.

The same reasoning applies here. Mr. Francisco's errors were careless. Taken as a whole, however, his briefs contained the correct citation (*Broussard*) and the error in citing *Harris* instead of *Broussard* did not mislead. Like the district court in *Yagman,* the magistrate judge cites no direct evidence of intent—only speculation based on the careless drafting and Mr. Francisco's purported failure to adequately explain his mistakes.

---

feature known as Copilot. Lexis has Lexis A.I. For better or worse, AI tools are now a regular presence in all professions, including the legal one.

1    Although not the basis for the magistrate's judge's sanctions, the backdrop in which the

2    sanctions were imposed is important context here.  At the hearing on the defense's motion to

3    unseal, the magistrate judge appeared very upset at Mr. Francisco's tone and language used in

4    his brief.  The court provided three examples of what it described as "very inflammatory and

5    serious accusations," which were taken from defense counsel's briefs:

6        "By taking unilateral action at a prosecution's informal request, the Clerk
         bypassed the judicial oversight necessary to ensure neutrality and transparency
7        in judicial proceedings."

8        "By immediately complying with the Government's directive, the Clerk
         acted as an agent for the prosecution rather than as an impartial custodian of
9        judicial records."

10       "The Government's approach risks eroding public confidence in the
         judiciary by creating the appearance that court staff act at the prosecution's
11       direction rather than as impartial administrators."

12

13   App. 68-69.

14       The magistrate judge then criticized defense counsel's arguments again as

15   "inflammatory," and characterized them as "the types of statements that actually do what the

16   Defense is talking about, which is undermine the integrity of the court system."  App. 69.  After

17   rejecting the arguments on the merits, the judge again stressed that "[t]o take from that and to

18   make inflammatory and extreme arguments is very concerning to the Court" and the defense "is

19   making arguments and statements for which there's no basis and are incredibly inflammatory

20   and incredibly concerning to the Court."  App. 70.  The judge went on to conclude that "it's

21   completely baffling to the Court why these arguments were even made to begin with."  App. 71.

22       A week later the magistrate judge issued her order to show cause why defense counsel

23   should not be sanctioned and then ultimately imposed the sanctions that are the basis for this

24   appeal.  In a criminal case, "[t]he need for restraint is uppermost when a judge is considering the

25   imposition of sanctions on defense counsel."  *In re Plaza-Martinez,* 747 F.3d 10, 13 (1st Cir.

26   2014) (vacating sanctions against defense attorney).  "[I]n such a situation, the judge must 'bear

27   in mind such counsel's important constitutional function.'"  *Id.*, citing *United States v. Agosto–*

28

*Vega*, 731 F.3d 62, 64 (1st Cir. 2013) (vacating sanctions against defense attorney). "It is, therefore, a bedrock proposition that sanctions, though an available weapon in a trial judge's armamentarium, should not be deployed so as 'to chill vigorous but legitimate advocacy' in a criminal case." *Id.*, citing *United States v. Figueroa–Arenas*, 292 F.3d 276, 279 (1st Cir. 2002) (vacating sanctions against defense attorney).

Here, as discussed above, Mr. Francisco made legitimate arguments that the court's sealing of a court document at the email request of government counsel was not done consistently with local rules. In doing so, counsel used language that the magistrate judge repeatedly called "inflammatory," arguing that by sealing the brief without a motion, the court effectively acted as an agent of the prosecution. Although few defense attorneys may have used such strong language, Mr. Francisco's written briefs fell within the bounds of legitimate advocacy. Especially in these times, defense attorneys need to be able to challenge perceived overreach without fear of reprisals, even when they use provocative or discomforting language.[11]

For the reasons stated above, the Court should reverse the magistrate judge's sanction order and bad faith finding as unsupported by clear and convincing evidence and should discharge the OSC. In light of the court's strong and repeated condemnation of defense counsel's "inflammatory" advocacy, if the Court instead remands for further proceedings, the Court should remand the sanctions issues to another judge "to preserve the appearance of justice." *In re Yagman,* 796 F.2d 1165, 1188, *amended*, 803 F.2d 1085 (9th Cir. 1986).

### D.    The sanctions are excessive under all the circumstances of the case.

"Because of their very potency, inherent powers must be exercised with restraint and discretion. A primary aspect of that discretion is the ability to fashion an appropriate sanction for conduct which abuses the judicial process." *Chambers,* 501 U.S. at 44-45. "[N]ormally there is much to be said for deploying the least extreme sanction reasonably calculated to achieve the

---

[11]    In denying reconsideration, the magistrate judge even criticized undersigned counsel personally for arguing that Mr. Francisco's arguments constituted legitimate advocacy and were not inflammatory. App. 176-77.

appropriate punitive and deterrent purposes." *United States v. Kouri-Perez*, 187 F.3d 1, 8 (1st Cir. 1999). "In this day and age, sanctions are a badge of reprobation that can haunt an attorney throughout his or her career. They can have ramifications that go far beyond the particular case." *In re Plaza-Martinez*, 747 F.3d at 14.

"It is inappropriate for courts to attempt to use [inherent powers] to justify an extreme remedy when, short of such heroic measures, the means are at hand to construct a satisfactory anodyne more narrowly tailored to the objective." *United States v. Horn*, 29 F.3d 754, 760 (1st Cir. 1994). In the related context of misconduct by the prosecutor, courts have recognized that it is inappropriate to use the court's supervisory power to redress misconduct that did not result in harm to the defendant. *See United States v. Santana*, 6 F.3d 1, 10 (1st Cir. 1993) (discussing cases). [12] The government was in no manner harmed by Mr. Francisco's citations. Its case against defendant Hayes was in no manner affected by litigation over sealing of a non-substantive pretrial motion. Indeed, the embarrassment of having a significant drafting error publicly identified is itself a significant deterrent. The sanctions order has had a life-changing, never-to-be-forgotten effect on Mr. Francisco far worse than the $1,500 fine and mandatory reporting of the order to the State Bar Association, sanctions with which Mr. Francisco timely complied. Even if some sanction were appropriate, the court should have applied a lesser remedy, such as an oral reprimand or warning.

When courts exercise their discretion under its inherent sanction powers, courts consider a variety of factors, including: "the nature and quality of the conduct at issue; who is responsible for the culpable conduct, as between attorney and client; whether there was a pattern of wrongdoing to require a stiffer sanction, the sanctioned party's ability to pay; whether the wrongdoing actually prejudiced the wrongdoer's opponent or hindered the administration of

---

[12]    It is worth noting that in over 30 years of practice in this district, defense counsel are unaware of any cases where a judge in this district personally sanctioned a federal prosecutor, even in cases where intentional misconduct was found.

justice; and the existence of mitigating factors." *Schaye v. Dunn,* 2006 U.S. Dist. Lexis 11155, at * 6 (D. Az. Mar. 20, 2006) (citing *Republic of the Philippines v. Westinghouse Elec. Corp.,* 43 F.3d 65, 74 (3d Cir. 1994)).

Here, the court's order also failed to take into account a number of these mitigating factors, such as Mr. Francisco's limited ability to pay, the lack of harm to opposing counsel, and Mr. Francisco's history of working in agencies in the public interest. Mr. Francisco is a U.S. Army combat veteran who has practiced law for six years, almost exclusively in the public interest.[13] This is the only time he has been sanctioned by a court. On January 31, 2025, the Federal Defender's Office served him with a "Notice of Adverse Action – Written Reprimand and Termination" based on the pleadings and court order in this case, which the Federal Defender's office affirmed on March 3, 2025. The notice provided the basis for his termination. The sanctions order has effectively killed his career in this district for mistakenly citing a single wrong case and erroneously attributing language as a quote instead of citing the correct case and properly noting its quoted legislative history.

Finally, the court acted at a time when few courts have set boundaries regarding the use of tools of artificial intelligence in legal advocacy. This court has no rule against it. As noted, all the major legal databases trumpet their AI tools. Law magazines and CLE offerings focus on the benefits of using AI. As the practice of law adapts to the use of AI tools, practitioners may easily use AI tools without realizing it and courts should be cautious about punishing those who err. Even the magistrate judge made no claim that Mr. Francisco intended to, or did, harm anybody by his mistaken citation. The immediate consequences of her action, that is, Mr.

---

[13]    In her sanction order, the magistrate judge noted that in another case, *United States v. Fahlgren,* No. 2:24-CR-0213-WBS, Mr. Francisco filed a notice of filing an amended response "to correct a clerical error in the formatting and language" when the amended response in fact deleted two sentences. App. 137, quoting *Fahlgren,* ECF No. 19. The amended filing did correct formatting (starting page 2 with Section II) and language (deleting two sentences for clarity). Nothing remotely improper or sanctionable.

Francisco's termination by the Office of the Federal Defender, may not be undone, but the sanctions order can and should be,

## V.    Conclusion

Mr. Francisco made regrettable mistakes that were not done for any strategic advantage and repeatedly apologized for them.  Undersigned counsel were both Assistant Federal Defenders before going into private practice and know the time pressures busy advocates face in researching and drafting briefs under tight deadlines.  We respectfully ask that the Court vacate the sanctions order and its bad faith finding, and discharge the order to show cause.   If the Court remands for further proceedings, remand should be to a different judge to preserve the appearance of justice.

Respectfully Submitted,


Dated:  May 9, 2025                    */s/ Tim Zindel*
                                        TIMOTHY ZINDEL


Dated:  May 9, 2025                    */s/ John Balazs*
                                        JOHN BALAZS
                                        Attorneys for Andrew Francisco